FIRST NATIONAL BANK, Appellant, v. SELMSER FUEL & GRAIN CO., Respondent.
FIRST NATIONAL BANK, Appellant, v. SELMSER FUEL & GRAIN CO., et al, Respondent.

(227 N. W. 62.)

(File Nos. 6632, 6633. Opinion filed October 15, 1929.)

*McFarland & Kremer,* of Watertown, for Appellant.

*Perry F. Loucks,* of Watertown, *R. A. Dunham,* of Clark, and *Hasche & Foley,* of Watertown, for Respondents.

BROWN, J.   Two actions wherein First National Bank of Watertown, as administrator with the will annexed and trustee of the estate of Harriet M. B. Tuthill, was plaintiff, one against Selmser Fuel & Grain Company, a corporation, and the other against Selmser Fuel & Grain Company, John H. Selmser, F. L. Bramble, and A. T. Hopkins, were consolidated for the purpose of trial and a verdict found for defendants upon all the issues, upon which a separate judgment in each action was entered dismissing

the action on the merits, and from the judgments and an order denying a new trial, plaintiff appeals. The nature of the complaint in each case is a matter of controversy.

In the action wherein the fuel and grain company alone is defendant, the complaint alleges, in substance, that on May 12, 1921, while John H. Selmser was the duly qualified and acting executor and trustee of the Harriet Tuthill estate and he, F. L. Bramble, and A. T. Hopkins were the sole stockholders, officers, and directors of Selmser Fuel & Grain Company, the company borrowed and received from Selmser as such executor and trustee $2,143.29, and on that date executed and delivered its promissory note wherein it agreed to pay to the order of the Harriet M. B. Tuthill estate one year after date the said sum of $2,143.29, with interest at 8 per cent per annum. It further alleges that on March 1, 1926, A. T. Hopkins, who was then an officer of defendant corporation, asked and was given permission to borrow the note from Selmser, and that he has since refused to return the same and holds it without any right or authority. Judgment for $2,143.29, with interest at 8 per cent from May 12, 1921, is demanded.

In the action wherein the company, Selmser, Bramble, and Hopkins are defendants, it is alleged that on October 7, 1920, the company borrowed and received from Selmser as executor $4,400 of the money of the estate and on that date executed and delivered its promissory note whereby it agreed to pay one year after date to the order of Selmser as executor of the estate $4,400, with interest at 8 per cent per annum, and that, at the time of borrowing the money and making and delivering the note, Selmser, Bramble, and Hopkins were the stockholders, officers, and directors of the grain company, and that as individuals they did each indorse the note with knowledge that the funds were the funds of the estate. The same allegation is made as to the borrowing and failure to return the note by Hopkins as in the other case, and judgment is demanded for the $4,400, with interest at 8 per cent.

Before the commencement of the actions, Selmser was removed as executor and trustee, and plaintiff was appointed in his place, and after the commencement of these actions, A. T. Hopkins and Wright Tarbell were appointed receivers of the fuel and grain company in an action in the circuit court of Codington county wherein Northwestern Fuel & Grain Company was plaintiff and Selmser Fuel & Grain Company was defendant. On or about June

5, 1921, Selmser accepted the note of Bramble dated February 17, 1921, due one year after date, payable to Selmser as executor of the estate for $3,416.12, with interest at 8 per cent, and took an assignment from Bramble of 44 shares of the Judith Basin Development Company as security, and at the same time Selmser took his own note as an individual to himself as executor of the estate for $3,127.17, dated June 5, 1921, due one year after date, with interest at 7 per cent, and took from himself as an individual to himself as executor 39 shares of the capital stock of Selmser Fuel & Grain Company as security for said note; these two notes being the aggregate of the two notes for $2,143.29 and $4,400, which last-mentioned notes Selmser as executor claims to have surrendered to himself as secretary of Selmser Fuel & Grain Company, and the defendants take the position that these individual notes of Selmser and Bramble, respectively, paid the amounts alleged to have been borrowed from the estate and evidenced by the two notes of $2,143.29 and $4,400, respectively. The court instructed the jury that, if they should find that the individual notes of Bramble and Selmser herein referred to were taken in payment and satisfaction of the two notes for $4,400 and $2,143.29, respectively, they should find for defendants, and, under this instruction, to which plaintiff duly excepted, the jury found for defendants. At the time of the trial in March, 1927, both Bramble and Selmser were hopelessly insolvent, and the shares in the Selmser Fuel & Grain Company taken as security for the Selmser note and in the Judith Basin Development Company taken as security for the Bramble note were worthless, although it was claimed that at the time their individual notes were given, as hereinbefore set forth, both Selmser and Bramble were in excellent financial condition and the shares given as security in each of these corporations were actually worth more than the par value of $100 a share.

At the close of plaintiff's evidence the individual defendants, Selmser, Bramble, and Hopkins each moved for a directed verdict because there was no evidence that notice of dishonor or non-payment of the note for $4,400 had been given to either of them, they claiming the actions were upon the notes; whereupon counsel for plaintiff asked for leave to amend the complaint to conform to the facts they claim were shown by the evidence by inserting therein, in substance, that the acts of the corporation and of said defendants individually in borrowing and receiving the money from

the estate for their own use in speculation in grain futures "was fraudulent and in fraud of the trust and estate," plaintiff contending that the actions were for money fraudulently misappropriated. This motion was denied, and the motion of defendants Hopkins and Bramble for a directed verdict was sustained and that of Selmser denied.

■ Neither of the complaints is a model of perspicuity, and there is ground for the contention of each party as to the nature of the action. The averment, as to the making of the notes and the demand for interest at the rate of 8 per cent provided in the notes, but which rate could not be recovered in an action for money had and received or for money converted, gives plausibility to the contention that the action is one upon the notes. On the other hand, there are averments as to the loaning of money and the knowledge of the defendants as to the purposes for which it was loaned by the executor that are entirely unnecessary and inappropriate to a straight action on the notes. We think the court should have granted plaintiff's application for leave to amend the complaint and have allowed him to present his theory of a misappropriation of the trust funds, especially so in view of the fact that one of the individual defendants was in default for six months and was allowed to interpose a lengthy answer at the time the cases were called for trial.

The evidence shows that, while Selmser was executor and trustee of the estate and before he "turned over" the $4,400 to Selmser Fuel & Grain Company, he had a talk with Bramble and Hopkins "relative to that loan" of $4,400 and as to each of them indorsing or signing a note for that sum, and that the indorsement of each of them was on the note before or at the time the loan was made or the money turned over. All of the defendants knew that these were trust funds that were being thus turned over to Selmser Fuel & Grain Company. It does not appear that Hopkins knew of the "transfer" of the $2,143.29, but Bramble did, and knew the purpose for which it was done, as also did Selmser, for he is the one who did the transferring.

■ In regard to the claim that the individual notes of Selmser and Bramble were taken in payment of the notes for $4,400 and $2,143.29, Selmser testified at one time that they were taken as collateral to the $4,400 and $2,143.29 notes, and that at

the time they were made he did not accept them in payment. It would seem that at some time later he made a pencil notation on some of the four notes, it is not clear which, to the effect that the individual notes of himself and Bramble were "substituted notes" for the $4,400 and $2,143.29 notes, but these latter notes never went out of his possession and do not seem to have ever been asked for by either Bramble or Hopkins until about December, 1925, when Selmser was having some trouble in the county court in regard to his handling of the funds of the estate, at which time, by stratagem according to Selmser, and with Selmser's consent according to Hopkins, Hopkins obtained possession of the company notes. In what capacity Selmser supposed he was holding the $4,400 and $2,143.29 notes during the 4½ years between the time the individual notes of Bramble and Selmser were given and the time when Hopkins obtained possession of them, whether as executor and trustee of the Tuthill estate or as secretary of the grain company, Selmser's rather confused testimony fails to make clear. The situation presents a striking illustration of the wisdom of the rule that a trustee shall not be permitted under any circumstances to deal with trust funds as if they were his own, nor should he be permitted to loan the trust funds to himself or to a corporation whose management is controlled by him and whose stock is largely owned by him. It was Selmser's duty, a duty which both Bramble and Hopkins were fully aware of when they aided him in the transfer of the trust funds to the corporation, not to have invested those funds where his self-interest was a temptation to him to neglect, or to act in opposition to, the interest of the trust estate, and the very fact that the collateral given with the individual notes of Selmser and Bramble, according to the testimony of all of the defendants, dwindled from a value above par to utter worthlessness while nothing whatever was done by Selmser as executor and trustee to realize either on the collateral or on the personal liability of the defendants, shows that in this instance the temptation of self-interest completely overwhelmed Selmser's sense of fidelity to his trust. We hold that the loaning of the money of the estate to Selmser Fuel & Grain Company was a conversion of the funds for which all who knowingly participated in the transaction are liable, that the making and indorsing of the notes did not release from or do away with the obligation to refund the moneys that had been misappropriated,

and that the want of notice of nonpayment of the $4,400 note by the grain company, while it may have released the individual indorsers from liability on the note as such, did not release from liability to make good the funds that had been misappropriated. It appears that both Bramble and Selmser knew when the money was taken from the estate that they were going to use it in what may properly be described as gambling on the Board of Trade. Bramble testified that he had arranged with Selmser "to purchase certain grain and wheat options for me on the Board of Trade" and that Selmser at that time said, "I will take a flier myself." Taking "a flier" with trust funds for ballast is clearly a violation of the duties of a trustee.

■ Respondent's contention that the appeal should be dismissed for the reason that notice of intention to move for a new trial was not served within the time prescribed by law and no good cause was shown for an extension of time demands but slight consideration. The order extending the time was made upon the condition that plaintiff pay defendant $12.50 terms. Defendant accepted the terms, and now seeks to have the other part of the order held void. He cannot be permitted to accept that part of the order which is profitable to him and avoid the part which he thinks is burdensome. "He who takes the benefit must bear the burden." Rev. Code 1919, § 53. He cites the cases of Fuller v. Anderson, 50 S. D. 568, 210 N. W. 992, and First National Bank v. Wollman, 51 S. D. 257, 213 N. W. 15, to the effect that notice of intention to move for a new trial is jurisdictional and asks that the appeal be dismissed, because "according to a host of authorities from all the states of the Union, jurisdiction cannot be conferred by consent." But in Stokes v. Rabenberg, 51 S. D. 493, 215 N. W. 492, 493, we held that the jurisdiction conferred by notice of intention to move for a new trial "is jurisdiction over the person, not of the subject-matter, and can be waived," and acceptance of the terms on which the extension was granted certainly waives any right to object to the extension. Schoenleber v. Burkhardt, 94 Wis. 575, 69 N. W. 343.

The judgment and order denying a new trial are reversed.

POLLEY and BURCH, JJ., concur.

SHERWOOD, P. J., disqualified and not sitting.

CAMPBELL, J., deeming himself disqualified, not sitting.